IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **TIG Insurance Company,** ) | FILED: JUNE 25, 2008 |
| ) | 08CV3618 |
| **Plaintiff,** ) | JUDGE NORGLE |
| ) | MAGISTRATE JUDGE ASHMAN |
| v. ) | **Case No.** |
| ) | PH |
| **Carnforth Limited,** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **Defendant.** ) | |

## COMPLAINT FOR DAMAGES

For its Complaint against defendant Carnforth Limited ("Carnforth"), plaintiff, TIG Insurance Company ("TIG"), by and through its attorneys, LOVELLS LLP, alleges as follows:

### INTRODUCTION

1. This case arises from Carnforth's failure to honor a reinsurance agreement that its predecessor issued to TIG's predecessor (the "Reinsurance Agreement"). Under the Reinsurance Agreement, Carnforth must indemnify TIG for losses paid and expenses incurred by TIG in connection with a primary general liability insurance policy that TIG issued to International Minerals & Chemical Corporation ("IMC"). Carnforth has wrongfully refused to pay TIG certain sums which Carnforth is legally obligated to reimburse as a result of losses and expenses TIG has incurred in connection with the primary policy issued to IMC. Accordingly, TIG brings this action to recover the sums owed to TIG pursuant to the Reinsurance Agreement.

### THE PARTIES

2. Plaintiff TIG is a California corporation with its principal place of business in New Hampshire. TIG is the legal successor-in-interest to an original party to the Reinsurance Agreement, International Insurance Company ("IIC").

3. On information and belief, defendant Carnforth is a reinsurance company domiciled in Bermuda and with its principal place of business in Hamilton, Bermuda. Carnforth is the legal successor-in-interest to the rights and obligations of an original party to the Reinsurance Agreement, A.M.Y. Limited ("AMY").

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. TIG is a citizen of California and New Hampshire while Carnforth is a citizen of Bermuda. Additionally, the sums at issue exceed $75,000.00.

5. Venue and personal jurisdiction are proper in this Court, under 28 U.S.C. § 1391 and 735 ILCS 5/2-209, respectively. Among other reasons, IIC was domiciled in Illinois throughout much of the period relevant to this Complaint, the Reinsurance Agreement was issued through an Illinois broker, and the Reinsurance Agreement applied with respect to a primary insurance policy issued to IMC at a location in Illinois.

## FACTUAL ALLEGATIONS

6. Reinsurance is an insurance contract issued to an insurer. The insurer purchasing the reinsurance is known as the "ceding insurer" or "cedent." TIG is the ceding company in this case. A reinsurance contract provides a right of reimbursement when the cedent incurs losses and/or expenses by making payments under specified underlying insurance policies or by participating in proceedings to resolve claims under such policies. A typical reinsurance agreement requires the cedent to pay its reinsurer a portion of the premiums collected under the insurance policies covered by the reinsurance agreement; in turn, the reinsurer agrees to indemnify the ceding company for a stated share of the losses and expenses incurred by the ceding company in connection with the underlying insurance policies.

7.  The Reinsurance Agreement at issue here is a Facultative Certificate issued by Carnforth, as successor-in-interest to AMY, to TIG, as successor-in-interest to IIC, effective August 1, 1980. A true and accurate copy of the Reinsurance Agreement is attached hereto as Exhibit 1.

8.  Under the Reinsurance Agreement, Carnforth is obligated to indemnify TIG for certain losses and expenses paid by TIG under the primary general liability policy that IIC issued to IMC for the policy period August 1, 1980 to August 1, 1982, and bearing policy number 540 31062 5 (the "IMC Policy"), subject to the terms, conditions, and limits of liability set forth in the Reinsurance Agreement.

9.  Mosaic Global Holdings, Inc., ("Mosaic"), a successor to certain assets and liabilities of IMC, sought coverage under the IMC Policy in connection with certain environmental liabilities arising out of a manufacturing site in Spartanburg, South Carolina.

10. TIG engaged in investigation, analysis, and litigation of Mosaic's claim for coverage. TIG incurred various expenses, including attorneys' fees, in investigating and litigating this claim.

11. After extensive negotiations, TIG and Mosaic reached a reasonable, good faith, and confidential settlement of Mosaic's coverage claim (the "Mosaic Settlement"). TIG has paid the sums due under the Mosaic Settlement.

12. The losses paid and expenses incurred by TIG in connection with Mosaic's coverage claim and the Mosaic Settlement fall within the coverage provided by the Reinsurance Agreement.

13. TIG has repeatedly requested that Carnforth indemnify it for the losses paid and expenses incurred by TIG in connection with Mosaic's coverage claim and the Mosaic Settlement.

14. Carnforth has failed and wrongfully refused to pay the amounts due and owing to TIG under the Reinsurance Agreement on the grounds that TIG purportedly waived its right to recover those sums under the Reinsurance Agreement.

15. Under the Mosaic Settlement, TIG waived the right to a reinsurance recovery only if, and to the extent that, Mosaic ultimately would be legally responsible to pay or reimburse TIG's reinsurance claim solely by reason of Mosaic's or its direct predecessors' ownership of the subject reinsurer.

16. Mosaic is not and will not be legally responsible to pay or reimburse Carnforth for the amounts due and owing to TIG and at issue in this case. TIG thus has not waived its claim to recover these sums under the Reinsurance Agreement.

## COUNT I - BREACH OF CONTRACT

17. Plaintiff TIG hereby re-alleges paragraphs 1 through 16 as though fully set forth herein.

18. Carnforth's failure to pay TIG the amounts due and owing constitutes a material breach of the Reinsurance Agreement.

19. TIG has fully performed all applicable obligations under the Reinsurance Agreement and has not waived any claims under the Reinsurance Agreement.

20. As a result of Carnforth's material breach of the Reinsurance Agreement, TIG has suffered financial damages in an amount to be proven at trial.

WHEREFORE, TIG respectfully requests the entry of a judgment awarding TIG:

(a) Compensatory damages for Carnforth's breach of the Reinsurance Agreement in an amount to be proven at trial;

(b) Pre- and post-judgment interest;

(c) Its attorneys' fees, costs and disbursements in this case; and

(d) Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

TIG demands a trial by jury of all issues so triable.

Respectfully submitted,

TIG INSURANCE COMPANY


_s/ Alexis A. Hawker_____
One of its Attorneys

David C. Linder
Alexis A. Hawker
LOVELLS LLP
330 North Wabash, Suite 1900
Chicago IL 60611
(312) 832-4400
(312) 832-4444 (fax)

KJ

```
08CV3618
JUDGE NORGLE
MAGISTRATE JUDGE ASHMAN

PH
```

# Exhibit 1

FACULTATIVE REINSURANCE CERTIFICATE

(Non-cancellable during currency of Ceding Company's Policies)

CEDING COMPANY:                          CERTIFICATE NUMBER:

International Insurance Company
233 South Wacker Dr.
Chicago, Illinois 60606               RENEWAL/REPLACES NUMBER:

ORIGINAL INSURED: International Minerals & Chemical Corporation

LOCATION: 2315 Sanders Road, Northbrook, Illinois 60062

Effective August 1, 1980 the Reinsurer hereby agrees to reinsure the CEDING COMPANY:

CURRENCY: U.S. DOLLARS

PREMIUM: "TBD" LESS _____ % COMMISSION

Reinsurer's Liability:

As respects Comprehensive General Liability under the Ceding Company's Policy Number GLAL 540 310621 5, Reinsurer agrees to reinsure the Ceding Company and be liable for One Hundred Percent (100%) of the first Five Hundred Thousand Dollars ($500,000) per occurrence of the Ceding Company's Liability including loss in excess of policy limits, if any, punitive damages, exemplary damages, fines and/or penalties and Allocated Loss Expenses in proportion to the ratio, that the amount of loss paid or payable hereunder by the Ceding Company bears to the total amount of the loss.

As respects Automobile Liability under the Ceding Company's Policy Number GLAL 540 310621 5, Reinsurer agrees to reinsure the Ceding Company and be liable for One Hundred Percent (100%) of the first Five Hundred Thousand Dollars ($500,000) per occurrence of the Ceding Company's Liability including loss in excess of policy limits, if any, punitive damages, exemplary damages, fines and/or penalties and Allocated Loss Expenses in proportion to the ratio, that the amount of loss paid or payable hereunder by the Ceding Company bears to the total amount of the loss.

THE CEDING COMPANY'S Policies are incorporated herein and made a part hereof.

Reinsurer will fund outstanding losses by either cash advances, escrow accounts for the benefits of the CEDING COMPANY, Letters of Credit or a combination thereof, if a penalty would accrue to the CEDING COMPANY in its statement without such funding. The funding shall be acceptable to the insurance regulatory authorities involved.

AMY LTD.

BY: *[signature: John E. ...]*

TITLE: VICE PRESIDENT

DATE: August 1, 1980

ADDRESS: Parker & Company
Interocean Ltd.
Hamilton, Bermuda